**Connie S. ADAMS, Plaintiff-Appellant,**

v.

**BROWN & ROOT, INC., et al.,
Defendants-Appellees.**

No. 81–3558
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Oct. 7, 1982.

Opinion on Denial of Rehearing
Feb. 10, 1983.

Lester J. Waldmann, Gretna, La., for plaintiff-appellant.

Christovich & Kearney, James F. Holmes, New Orleans, La., for Brown & Root, Inc. and Highlands Ins. Co.

Before GEE, RANDALL and TATE, Circuit Judges.

GEE, Circuit Judge:

In this suit by the widow of a Jones Act seaman for his wrongful death, the defendants introduced evidence that the widow had earlier settled her claim after an in-court proceeding. In the course of that proceeding, the late Judge Blake West concluded that she understood her rights, was acting freely and with a full appreciation of the consequences of settling, and was not the victim of any deception, coercion or fraud. After a three-day trial, the jury agreed with the judge's prior assessment on the circumstances of the settlement, rendering a verdict that upheld the settlement and release. She appeals, asserting as her sole point of error that the trial judge erred in admitting at trial evidence of her remarriage subsequent to the death of her deceased husband. Since we conclude that there was no objection to the admission of this evidence and that its admission does not rise to the level of "plain error," and that even had there been the error was harmless, we affirm.

In the course of the trial, counsel for the widow posed several questions to her touching upon her relationship with her deceased husband and the circumstances under which she learned of his death, following which she broke down on the witness stand and a recess was ordered. (Tr. 223–4). Later, on cross, the defendant's counsel elicited from her that prior to her marriage to the decedent she had been married and divorced (Tr. 248). An objection was lodged to this evidence of her *prior* marriage and, after a lengthy colloquy between counsel and the court in the absence of the jury, the court ruled that, in view of the improper questions that precipitated her breakdown, he would allow the defense to show the fact of her prior marriage and divorce, but not the details of these matters. (Tr. 250a). The entire colloquy was concerned with evidence of the prior marriage and whether the cause of the divorce could be shown (Tr. 248–250b), though at one point the judge did remark that he would permit a showing of "how many times that she has been married." [1] The colloquy ended with an objection by the widow's counsel "to anything about the subject" (Tr. 250b).

When the trial resumed, however, the following exchange occurred:

[By defense counsel]

Q Mrs. Adams, I think we were saying that when you were fifteen, I think it

---

1. There is no indication in the colloquy that the defense intended to introduce evidence of a *subsequent* marriage, or that the judge—in making his "how many times" observation—had such evidence in contemplation or was ruling on its admissibility.

was March of '71 that you left school to marry Mr. Morgan, is that correct?

A I would say somewhere around that time.

Q And that marriage ended in divorce in October of '72, I believe, is that correct?

A I thought in '71, it could have been '72.

Q You mean the divorce?

A Pardon me.

Q The divorce?

A Yes.

Q And, of course, you are remarried today?

A Yes, I am.

Q And what is your name now?

A Sons.

(Tr. 251). No objection was lodged to the remarriage testimony when given.

In our view, despite the judge's "how many times" observation, a fair construction of the colloquy mentioned does not indicate that it concerned evidence of the plaintiff's present marital status, or that counsel's general objection "to anything about the subject" can fairly be taken as including this new subject matter. "The subject" of the colloquy was the widow's prior marriage and the reasons for its breakup.

 If not, we are empowered to review the admission of evidence of her current marital status only under the "plain error" standard: whether the error, by its obviousness or otherwise, is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936). Clearly this was not such.

But even if we are mistaken and the error was fairly brought to the judge's attention, we see no harmful error. The issue on appeal is whether the release was, as the jury found, freely entered into by the plaintiff, with an informed understanding of her rights, with a full appreciation of its consequences, and without deception, coercion or fraud on the part of the settlors. Evidence

---

2. "We must guard against the magnification on appeal of instances which were of little importance in their setting." *Glasser v. United*

---

of her subsequent remarriage is entirely irrelevant to these questions and could have borne on them only had it been of such a nature as to discredit her personally—so as to cause the jury to view her testimony on the relevant issues with suspicion. There is, however, neither moral nor social opprobrium attached to a widow's mere remarriage, and we are unable to see how these four lines of irrelevant testimony on the subject in a trial of several days could have prejudiced her case.[2]

AFFIRMED.

## ON PETITION FOR REHEARING

Before GEE, RANDALL and TATE, Circuit Judges.

PER CURIAM:

On rehearing, the panel is no longer unanimous in the conclusion of our earlier opinion, reported at 688 F.2d 410, that error, if any, was harmless. We remain, however, unanimous in the view that no objection was made to the admission of the evidence complained of on appeal and that plain error is not presented.

Unanimity being required for dispositions on the summary calendar, we withdraw all references to harmless error contained in the opinion, leaving our affirmance to rest on the other, sufficient ground. In all other respects, the rehearing is

DENIED.

---

*States*, 315 U.S. 60, 83, 62 S.Ct. 457, 470, 86 L.Ed. 680 (1942).